**Fill in this information to identify the case:**

Debtor 1   **CRYSTAL CLARK**
First Name ___ Middle Name ___ Last Name

Debtor 2
(Spouse, if filing)   First Name ___ Middle Name ___ Last Name

United States Bankruptcy Court for the: EASTERN DISTRICT OF PENNSYLVANIA

Case number   25- 12457
(if known)

## Official Form 427
# Cover Sheet for Reaffirmation Agreement          12/15

Anyone who is a party to a reaffirmation agreement may fill out and file this form. Fill it out completely, attach it to the reaffirmation agreement, and file the documents within the time set under Bankruptcy Rule 4008.

### Part 1: Explain the Repayment Terms of the Reaffirmation Agreement

**1. Who is the creditor?**   Citizens Bank N.A
Name of the creditor

**2. How much is the debt?**

On the date that the bankruptcy case is filed   $ 29,947.02

To be paid under the reaffirmation agreement   $ 29,947.02

$ 599.84   per month for   288   months (if fixed interest rate)

**3. What is the Annual Percentage Rate (APR) of interest? (See Bankruptcy Code § 524(k)(3)(E).)**

Before the bankruptcy case was filed   9.4   %

Under the reaffirmation agreement   9.4   %   ☐ Fixed rate
                                                    ☑ Adjustable rate

**4. Does collateral secure the debt?**
☐ No
☑ Yes.   Describe the collateral.   5704 N 12TH ST PHILADELPHIA PA 19141

Current market value $   61,800.00

**5. Does the creditor assert that the debt is nondischargeable?**
☑ No
☐ Yes.   Attach an explanation of the nature of the debt and the basis for contending that the debt is nondischargeable.

**6. Using information from Schedule I: Your Income (Official Form 106I) and Schedule J: Your Expenses (Official Form 106J), fill in the amounts.**

| | Income and expenses reported on Schedules I and J | Income and expenses stated on the reaffirmation agreement |
|---|---|---|
| 6a. Combined monthly income from line 12 of Schedule I | $ 3954.94 | 6e. Monthly income from all sources after payroll deductions $ 3954.94 |
| 6b. Monthly expenses from line 22c of Schedule J | $ 3950.33 | 6f. Monthly expenses − $ 3950.33 |
| 6c. Monthly payments on all reaffirmed debts not listed on Schedule J | − $ 0 | 6g. Monthly payments on all reaffirmed debts not included in monthly expenses − $ 0 |
| 6d. Scheduled net monthly income. Subtract lines 6b and 6c from 6a. If the total is less than 0, put the number in brackets. | $ 4.61 | 6h. Present net monthly income. Subtract lines 6f and 6g from 6e. If the total is less than 0, put the number in brackets. $ 4.61 |

Debtor 1    **CRYSTAL CLARK**                          Case number *(if known)* **25-12457**

         First Name      Middle Name      Last Name

| | | |
|---|---|---|
| **7. Are the income amounts on lines 6a and 6e different?** | ☑ No<br>☐ Yes. Explain why they are different and complete line 10. _____<br>_____ | |
| **8. Are the expense amounts on lines 6b and 6f different?** | ☑ No<br>☐ Yes. Explain why they are different and complete line 10. _____<br>_____ | |
| **9. Is the net monthly income in line 6h less than 0?** | ☑ No<br>☐ Yes. A presumption of hardship arises (unless the creditor is a credit union). Explain how the debtor will make monthly payments on the reaffirmed debt and pay other living expenses.<br>Complete line 10.<br>_____<br>_____ | |
| **10. Debtor's certification about lines 7-9**<br><br>If any answer on lines 7-9 is *Yes,* the debtor must sign here.<br><br>If all the answers on lines 7-9 are *No,* go to line 11. | I certify that each explanation on lines 7-9 is true and correct.<br><br>X /s/ Crystal Renee Clark-Jordan<br>     Crystal Renee Clark-Jordan, Debtor 1 | X<br>Signature of Debtor 2 (Spouse Only in a Joint Case) |
| **11. Did an attorney represent the debtor in negotiating the reaffirmation agreement?** | ☐ No<br>☑ Yes. Has the attorney executed a declaration or an affidavit to support the reaffirmation agreement?<br>     ☐ No<br>     ☑ Yes | |

---

### Part 2:   Sign Here

**Whoever fills out this form must sign here.**      I certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this *Cover Sheet for Reaffirmation Agreement.*

     X **/s/ Michael A. Cibik**            Date **07/24/2025**
       Signature of Attorney for Debtor              MM / DD / YYYY

     **Michael A. Cibik**
     Printed Name

     Check One:
     ☑ Debtor or Debtor's Attorney
     ☐ Creditor or Creditor's Attorney



B240A/B ALT (Form 240A/B ALT) (Reaffirmation
Agreement) (12/11)

☐ Presumption of Undue Hardship
☑ No Presumption of Undue Hardship
(Check box as directed in Part D: Debtor's Statement in
Support of Reaffirmation Agreement.)

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

In Re CRYSTAL CLARK, _____ ,
Debtor(S)

Case No. 25-12457 _____

Chapter 7 _____

## REAFFIRMATION AGREEMENT
*[Indicate all documents included in this filing by checking each applicable box.]*

☑ Part A: Disclosures, Instructions, and
Notice to Debtor (pages 1 - 5)

☑ Part B: Reaffirmation Agreement

☑ Part C: Certification by Debtor's Attorney

☑ Part D: Debtor's Statement in
Support of Reaffirmation Agreement

☐ Part E: Motion for Court Approval

*[Note: Complete Part E only if debtor was not represented by an attorney during the
course of negotiating this agreement. Note also: If you complete Part E, you must
prepare and file Form 240C ALT - Order on Reaffirmation Agreement.]*

**Name of Creditor:** Citizens Bank N.A _____

☐ *[Check this box if]* Creditor is a Credit Union as defined in §19(b)(l)(a)(iv) of the
Federal Reserve Act

## PART A: DISCLOSURE STATEMENT, INSTRUCTIONS AND NOTICE TO DEBTOR

### 1. DISCLOSURE STATEMENT

***Before Agreeing to Reaffirm a Debt, Review These Important Disclosures:***

## SUMMARY OF REAFFIRMATION AGREEMENT
This Summary is made pursuant to the requirements of the Bankruptcy Code.

## AMOUNT REAFFIRMED

The amount of debt you have agreed to reaffirm:          $ 29,947.02 _____

*The amount of debt you have agreed to reaffirm includes all fees and costs (if any) that have
accrued as of the date of this disclosure. Your credit agreement may obligate you to pay additional
amounts which may come due after the date of this disclosure. Consult your credit agreement.*

**Form 240A/B ALT - Reaffirmation Agreement (Cont.)**                                    **2**

## ANNUAL PERCENTAGE RATE

*[The annual percentage rate can be disclosed in different ways, depending on the type of debt.]*

    a. If the debt is an extension of "credit" under an "open end credit plan," as those terms are defined in § 103 of the Truth in Lending Act, such as a credit card, the creditor may disclose the annual percentage rate shown in (i) below or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

    (i) The Annual Percentage Rate disclosed, or that would have been disclosed, to the debtor in the most recent periodic statement prior to entering into the reaffirmation agreement described in Part B below or, if no such periodic statement was given to the debtor during the prior six months, the annual percentage rate as it would have been so disclosed at the time of the disclosure statement: <u>9.4</u>          %.

— And/Or —

    (ii) The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: _____ %. If different simple interest rates apply to different balances included in the amount reaffirmed, the amount of each balance and the rate applicable to it are:

$_____ @ _____ %;

$_____ @ _____ %;

$_____ @ _____ %;

    b. If the debt is an extension of credit other than under an open end credit plan, the creditor may disclose the annual percentage rate shown in (i) below, or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

    (i) The Annual Percentage Rate under §128(a)(4) of the Truth in Lending Act, as disclosed to the debtor in the most recent disclosure statement given to the debtor prior to entering into the reaffirmation agreement with respect to the debt or, if no such disclosure statement was given to the debtor, the annual percentage rate as it would have been so disclosed: _____ %.

— And/Or —

    (ii) The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: <u>9.4</u>          %. If different simple interest rates apply to different balances included in the amount reaffirmed, the amount of each balance and the rate applicable to it are:

**Form 240A/B ALT - Reaffirmation Agreement (Cont.)**          **3**

$_____ @ _____ %.
$_____ @ _____ %.
$_____ @ _____ %.

c. If the underlying debt transaction was disclosed as a variable rate transaction on the most recent disclosure given under the Truth in Lending Act:

The interest rate on your loan may be a variable interest rate which changes from time to time, so that the annual percentage rate disclosed here may be higher or lower.

d. If the reaffirmed debt is secured by a security interest or lien, which has not been waived or determined to be void by a final order of the court, the following items or types of items of the debtor's goods or property remain subject to such security interest or lien in connection with the debt or debts being reaffirmed in the reaffirmation agreement described in Part B.

| Item or Type of Item | Original Purchase Price or Original Amount of Loan |
|---|---|
| 5704 N 12TH ST PHILADELPHIA PA 19141 | 30,000.00 |

*Optional—At the election of the creditor, a repayment schedule using one or a combination of the following may be provided:*

**Repayment Schedule:**

Your first payment in the amount of $_____ is due on _____ (date), but the future payment amount may be different. Consult your reaffirmation agreement or credit agreement, as applicable.

— Or —

Your payment schedule will be: 288 _____ (number) payments in the amount of $ 599.84 _____ each, payable (monthly, annually, weekly, etc.) on the 14 (day) of each month ( week, month, etc.), unless altered later by mutual agreement in writing.

— Or—

A reasonably specific description of the debtor's repayment obligations to the extent known by the creditor or creditor's representative.

### 2. INSTRUCTIONS AND NOTICE TO DEBTOR

**Form 240A/B ALT - Reaffirmation Agreement (Cont.)**                    **4**

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps are not completed, the reaffirmation agreement is not effective, even though you have signed it.

1. Read the disclosures in this Part A carefully. Consider the decision to reaffirm carefully. Then, if you want to reaffirm, sign the reaffirmation agreement in Part B (or you may use a separate agreement you and your creditor agree on).

2. Complete and sign Part D and be sure you can afford to make the payments you are agreeing to make and have received a copy of the disclosure statement and a completed and signed reaffirmation agreement.

3. If you were represented by an attorney during the negotiation of your reaffirmation agreement, the attorney must have signed the certification in Part C.

4. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, you must have completed and signed Part E.

5. The original of this disclosure must be filed with the court by you or your creditor. If a separate reaffirmation agreement (other than the one in Part B) has been signed, it must be attached.

6. If the creditor is not a Credit Union and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court unless the reaffirmation is presumed to be an undue hardship as explained in Part D. If the creditor is a Credit Union and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court.

7. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, it will not be effective unless the court approves it. The court will notify you and the creditor of the hearing on your reaffirmation agreement. You must attend this hearing in bankruptcy court where the judge will review your reaffirmation agreement. The bankruptcy court must approve your reaffirmation agreement as consistent with your best interests, except that no court approval is required if your reaffirmation agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home.

Form 240A/B ALT - Reaffirmation Agreement (Cont.)                    5

# YOUR RIGHT TO RESCIND (CANCEL) YOUR REAFFIRMATION AGREEMENT

You may rescind (cancel) your reaffirmation agreement at any time before the bankruptcy court enters a discharge order, or before the expiration of the 60-day period that begins on the date your reaffirmation agreement is filed with the court, whichever occurs later. To rescind (cancel) your reaffirmation agreement, you must notify the creditor that your reaffirmation agreement is rescinded (or canceled).

## Frequently Asked Questions:

What are your obligations if you reaffirm the debt? A reaffirmed debt remains your personal legal obligation. It is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Otherwise, your obligations will be determined by the reaffirmation agreement which may have changed the terms of the original agreement. For example, if you are reaffirming an open end credit agreement, the creditor may be permitted by that agreement or applicable law to change the terms of that agreement in the future under certain conditions.

Are you required to enter into a reaffirmation agreement by any law? No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments you agree to make.

What if your creditor has a security interest or lien? Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage, or security deed. Even if you do not reaffirm and your personal liability on the debt is discharged, because of the lien your creditor may still have the right to take the property securing the lien if you do not pay the debt or default on it. If the lien is on an item of personal property that is exempt under your State's law or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you must make a single payment to the creditor equal to the amount of the allowed secured claim, as agreed by the parties or determined by the court.

NOTE: When this disclosure refers to what a creditor "may" do, it does not use the word "may" to give the creditor specific permission. The word 'may' is used to tell you what might occur if the law permits the creditor to take the action. If you have questions about your reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement reaffirming a debt. If you don't have an attorney helping you, the judge will explain the effect of your reaffirming a debt when the hearing on the reaffirmation agreement is held.

**B2400A/B ALT (Form 2400A/B ALT) (12/15)**                                        **6**

**PART B: REAFFIRMATION AGREEMENT.**

    I (we) agree to reaffirm the debts arising under the credit agreement described below.

    1. Brief description of credit agreement:

    Mortgage and Note

        2. Description of any changes to the credit agreement made as part of this reaffirmation
agreement:

<u>SIGNATURE(S):</u>

<u>Borrower:</u>                                                         <u>Accepted by creditor:</u>

  **Crystal Renee  Clark-Jordan**                                   Citizens Bank N.A.
_____                         _____
(Print Name)                                                    (Printed Name of Creditor)

  **/s/ Crystal Renee Clark-Jordan**                            Attn: JCA115, PO Box 42002, Providence RI 02940
_____                         _____
(Signature)                                                     (Address of Creditor)

Date:  **07/24/2025**
_____                         _____
                                                        (Signature)      Jonathan Masello
                                                                 Bankruptcy Recovery Manager
                                                                          Officer
<u>Co-borrower,</u> if also reaffirming these debts:                       Consumer Specialty Operations
                                                        _____
                                                        (Printed Name and Title of Individual Signing for
                                                        Creditor)
_____
(Print Name)

_____                         Date of creditor acceptance:
(Signature)

Date:                                                   _____7/29/25_____

**B2400A/B ALT (Form 2400A/B ALT) (12/15)**                    **7**

## PART C: CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY).

*[To be filed only if the attorney represented the debtor during the course of negotiating this agreement.]*

I hereby certify that (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ *[Check box, if applicable and the creditor is not a Credit Union.]* A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

Printed Name of Debtor's Attorney:  **Michael A. Cibik**

Signature of Debtor's Attorney:  **/s/ Michael A. Cibik**

Date:  **07/24/2025**

**B2400A/B ALT (Form 2400A/B ALT) (12/15)**                                    **8**

## PART D: DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

*[Read and complete sections 1 and 2, __OR,__ if the creditor is a Credit Union and the debtor is represented by an attorney, read section 3. Sign the appropriate signature line(s) and date your signature. If you complete sections 1 and 2 __and__ your income less monthly expenses does not leave enough to make the payments under this reaffirmation agreement, check the box at the top of page 1 indicating "Presumption of Undue Hardship." Otherwise, check the box at the top of page 1 indicating "No Presumption of Undue Hardship"]*

1. I believe this reaffirmation agreement will not impose an undue hardship on my dependents or me. I can afford to make the payments on the reaffirmed debt because my monthly income (take home pay plus any other income received) is $ _3,954.94_ , and my actual current monthly expenses including monthly payments on post-bankruptcy debt and other reaffirmation agreements total $ _3,349.33_ , leaving $ _605.61_ to make the required payments on this reaffirmed debt.

I understand that if my income less my monthly expenses does not leave enough to make the payments, this reaffirmation agreement is presumed to be an undue hardship on me and must be reviewed by the court. However, this presumption may be overcome if I explain to the satisfaction of the court how I can afford to make the payments here: _____

_____

_____

**(Use an additional page if needed for a full explanation.)**

2. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed:    __/s/ Crystal Renee Clark-Jordan__
              (Debtor)

              _____
              (Joint Debtor, if any)
Date:       __07/24/2025__

— Or —

*[If the creditor is a Credit Union and the debtor is represented by an attorney]*

3. I believe this reaffirmation agreement is in my financial interest. I can afford to make the payments on the reaffirmed debt. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed:    _____
              (Debtor)

              _____
              (Joint Debtor, if any)
Date:       _____

**B2400A/B ALT (Form 2400A/B ALT) (12/15)**                                        9

## PART E: MOTION FOR COURT APPROVAL

*[To be completed and filed only if the debtor is not represented by an attorney during the course of negotiating this agreement.]*

### MOTION FOR COURT APPROVAL OF REAFFIRMATION AGREEMENT

I (we), the debtor(s), affirm the following to be true and correct:

I am not represented by an attorney in connection with this reaffirmation agreement.

I believe this reaffirmation agreement is in my best interest based on the income and expenses I have disclosed in my Statement in Support of this reaffirmation agreement, and because (provide any additional relevant reasons the court should consider):

Therefore, I ask the court for an order approving this reaffirmation agreement under the following provisions *(check all applicable boxes)*:

☐ 11 U.S.C. § 524(c)(6) (debtor is not represented by an attorney during the course of the negotiation of the reaffirmation agreement)

☐ 11 U.S.C. § 524(m) (presumption of undue hardship has arisen because monthly expenses exceed monthly income)

Signed:  _____
              (Debtor)

              _____
              (Joint Debtor, if any)

Date:  _____

# ✖✖ Citizens™

## HOME EQUITY LINE OF CREDIT AGREEMENT

███CLARK███

Borrower(s): **CRYSTAL CLARK**

Lender:   ██CITIZENS BANK, N.A.██

---

Date of Agreement: **JULY 9, 2024**

This HOME EQUITY LINE OF CREDIT AGREEMENT ("Agreement") contains the terms which govern your line of credit (the "Credit Line" or the "Credit Line Account") issued through **CITIZENS BANK, N.A.** as identified above and hereafter referred to as "Citizens". The Agreement sets forth the terms under which Citizens extends credit advances against your Credit Line Account. Each person who signs this Agreement will be bound by its terms and conditions and will be responsible for paying all amounts owed. In this Agreement, the words "Borrower," "you," "your," and "Applicant" mean each and every person who signs this Agreement, including all Borrowers named above. The words "we," "us," "our," and "Lender" mean Citizens as identified above. **You agree to the following terms and conditions:**

**1. Promise to Pay.** You promise to pay Citizens the total of all credit advances made by us under the terms of this Agreement, any other charges, and **FINANCE CHARGES** due, together with all costs and expenses for which you are responsible under this Agreement or under the equity line security instrument "Security Instrument" which secures this Agreement. You will pay your Credit Line according to the payment terms set forth below.

**2. Term.** The term of your Credit Line will begin as of the date of the Agreement ("Opening Date") and will continue until termination of your Credit Line Account. All indebtedness under this Agreement, if not already paid pursuant to the payment provisions below, will be due and payable upon termination. The "Draw Period" of your Agreement will begin on a date, after the Opening Date, when the Agreement is accepted in the State of Rhode Island following the expiration of the right to cancel, and the meeting of all of our other conditions and will continue for a period of ten (10) years, subject to the terms and conditions of this Agreement. You may obtain credit advances during the "Draw Period" not to exceed, at any time, the credit limit of your line of credit, which is **$30,000.00** and more fully described in **paragraph 5**, "Credit Limit". After the Draw Period ends, the Repayment Period will begin; and you will no longer be able to obtain credit advances. The length of the Repayment Period is Fifteen (15) Years. The end of the Fifteen (15) Years is known as the "Maturity Date".

**3. Payments.**

### a) Draw Period

You can obtain advances of credit for ten (10) years (the "Draw Period"). You have chosen the payment option checked below. The option checked below is based on the option that was indicated on your home equity application. If no option was indicated on your application, the loan will default to Option One (Interest Only).

☐ **Option One:** Monthly interest-only payments - Under this option, your payments will be due monthly and will equal the **FINANCE CHARGES** that accrued on the outstanding principal balance during the preceding billing period, plus insurance premiums (if any), all other charges and any amount past due. The Minimum Payment will not reduce the principal that is outstanding on your Credit Line Account. This option will result in greater expenses over the life of the Credit Line Account.

Heloc Agreement - RV 5/2024





JULY 8, 2024

☒ **Option Two:** 2% of the balance - Under this option, your payments will be due monthly and will equal 2% of the New Total Balance (which includes the principal balance and outstanding **FINANCE CHARGES** as of the end of the billing period plus insurance premiums [if any], and all other charges), plus late fees and any amount past due. The Minimum Payment will equal $20.00 or the outstanding balance on your Credit Line Account, whichever is less.

#### b) Changing Your Draw Period Payment Option

You may change your Draw Period Payment Option from Option 1 to Option 2, or from Option 2 to Option 1. You must ask us in writing at least 15 days before the start of the billing cycle in which you want to change your Draw Period Payment Option.

We do not have to let you change your Draw Period Payment Option if; (i) any of your payments under this agreement are past due at the time you make your request, (ii) your account balance is higher than your credit line at the time when you ask us to change your Draw Period Payment Option, or (iii) we, in our sole discretion, believe that your account is not in good standing.

#### c) Repayment Period

*After the draw period ends, you will no longer be able to obtain credit advances and must pay the outstanding balance over 15 years (the "repayment period").* During the repayment period, payments will be due monthly. Your minimum monthly payment will equal 1/180th of the balance that was outstanding at the end of the draw period plus the **FINANCE CHARGES** that have accrued on the remaining balance, plus any amount past due and all other charges or $20.00; whichever is greater.

#### d) Payments

All payments must be made by a check, money order, or other instrument in U.S. dollars and must be received by us at the remittance address shown on your periodic billing statement. Payments received at that address on any business day will be credited to your Credit Line as of the date received **so that finance and other charges will not accrue on the amount paid. However, the Lender may delay for a reasonable time the availability of the funds until Lender has had an opportunity to confirm the validity of the payment.** Payments may also be made at any of our branch offices. You may also make payments by authorizing us to debit your Citizens checking account each month in the amount of the Minimum Payment or you can make payments using online banking or mobile banking. Payments sent by mail must be mailed early enough to insure receipt by us on the Payment Due Date.

**4. Application of Payments.** Unless otherwise agreed or required by applicable law, during the Draw Period, payments and other credits will be applied in the following order: to the oldest unpaid billings first, and then sequentially to any other unpaid billings from the oldest to the most current. Payments in excess of billed amounts will be credited to your account. During the Repayment Period, your payments will be applied in the following order, assuming that it is made by the Payment Due Date: (a) The interest portion of the unpaid Minimum Payment; and (b) any additional amount paid that exceeds interest due will next be applied to the principal portion of the unpaid Minimum Payment. If you make a payment greater than the Minimum Payment, but less than the Total Due shown on your periodic statement you will still be required to make the Minimum Payments in the months that follow. We will refund to you any credit balance upon request if there is a credit balance on the date we receive the refund request.

**5. Credit Limit.** This Agreement covers a revolving line of credit for $30,000.00 which will be your "Credit Limit" under this Agreement. This is the maximum credit that is to be extended to you. If the Credit Limit is exceeded, you will be in default of a material obligation under this Agreement and the provisions of **paragraph 7**, "Limitations on Use of Checks" will apply. You may borrow against the Credit Line, repay any portion of the amount borrowed, and re-borrow up to the amount of the Credit Limit. You agree not to attempt, request, or obtain a credit advance that will make your Credit Line Account balance exceed your Credit Limit. Your Credit Limit will not be increased should you overdraw your Credit Line Account. If you exceed your Credit Limit, you agree

Heloc Agreement - RV 5/2024

JULY 8, 2024

to repay immediately the amount by which your Credit Line Account exceeds your Credit Limit, even if we have not yet billed you.

**6. How to Use the Credit Line.** You may obtain credit advances under your Credit Line by writing a preprinted "check" that we will supply to you. Credit Line checks are specially designated checks which can be completed just like any other check. Each check written and negotiated will create a check advance from us to you. Checks drawn on the Account on forms other than those forms supplied by us for that purpose will not be honored. Each check you write will be paid with a check advance from your Account unless you are in default under this Agreement, as described in **paragraph 23,** "Termination and Acceleration", or in those circumstances described in **paragraph 7,** "Limitations on Use of Checks." Your use of a check will be reflected on your periodic statement as a check advance. Credit Line checks will not be certified by us and you agree that we may retain the actual checks written by you, and need not return the original checks to you. You may also obtain credit advances from your Credit Line by transferring funds from your Citizens Home Equity Line of Credit to your Citizens checking account using online banking or mobile banking. We may also provide additional ways of using your Account from time to time.

If there is more than one person authorized to use this Credit Line Account, each of you agree not to give us conflicting instructions, such as one of you telling us not to give check advances to the other.
Any such instructions will not be followed by us. However, any one of you may cancel your Credit Line under **paragraph 30,** "Cancellation by You".

**7. Limitations on Use of Checks.** We reserve the right not to honor Credit Line checks in the following circumstances:

    (a) Your Credit Limit has been, or would be, exceeded by paying the check.
    (b) Your check is post-dated. If a post-dated check is paid and as a result any other check is returned or not paid, we are not responsible, subject to any applicable law.
    (c) Your checks have been reported lost or stolen.
    (d) Your check is not signed by an "Authorized Signer" as defined below.
    (e) Your Credit Line has been terminated or suspended as provided in this Agreement or could be if we paid the check.
    (f) You are in violation of any other transaction requirement or would be if we paid the check.

If we pay any check under these circumstances, you must repay us, subject to applicable laws, for the amount of the check. The check itself will be evidence of your debt to us together with this Agreement. Our liability, if any, for wrongful dishonor of a check is limited to your actual damages. Dishonor for any reason as provided in this Agreement is not wrongful dishonor.

**8. Authorized Signers.** The words "Authorized Signer" on checks as used in this Agreement mean and include each person who (a) signs the application for this Credit Line, and (b) signs this Agreement.

**9. Stop Payments.** We do not honor stop payment orders for checks drawn against your Credit Line Account. You therefore should not use your Credit Line Account if you anticipate the need to stop payment. You agree that we will have no liability to you or to any other party because we do not honor stop payment orders.

**10. Lost Checks.** If you lose your checks or someone is using them without your permission, you agree to notify us immediately. The fastest way to notify us is by calling us at            You also can notify us at Citizens,

**11. Charges to Your Credit Line.** We may charge your Credit Line to pay other fees and costs that you are obligated to pay under this Agreement, under the Security Instrument or under any other document related to your Credit Line. In addition, we may charge your Credit Line for funds required for continuing insurance coverage as described in the **paragraph 13 (a),** "Insurance" or as described in the Security Instrument. We may also, at our option, charge your Credit Line to pay any costs or expenses to protect or perfect our security interest in your dwelling. These costs or expenses include, without limitation, payments to cure defaults under any existing liens on your dwelling. If you do not pay your property taxes, we may charge your Credit Line and pay the delinquent

Heloc Agreement - RV 5/2024
JULY 8, 2024

taxes. Any amount so charged to your Credit Line will be a credit advance and will decrease the funds available, if any, under the Credit Line. However, we have no obligation to provide any of the credit advances referred to in this paragraph. Any credit advances referred to in this paragraph will be made in accordance with the requirements of applicable law.

**12. Collateral.** This Agreement is secured by a Security Instrument dated **JULY 9, 2024** to us on property located in **PHILADELPHIA** County, State or Commonwealth of **PENNSYLVANIA**, (the "Property"). We have the right, but are not required to take such action as is necessary to protect our Security Interest described in this paragraph. Any amounts we may pay in exercising our right to protect our Security Interest must be paid by you on demand, and will bear interest at the **ANNUAL PERCENTAGE RATE** then applicable to your account.

**IMPORTANT NOTICE ABOUT YOUR REAL PROPERTY COLLATERAL:** If the deed to the PROPERTY you are pledging as security for this loan includes more than one parcel of land, the SECURITY INSTRUMENT you are signing will be secured by ALL parcels described in your deed. If your deed contains more than one parcel of land and you do not want to pledge all of them as security for your loan you should contact your legal representative.

**13 (a). Insurance.** You must obtain insurance on the Property securing this Agreement through any company of your choice that is reasonably satisfactory to us. The insurance may be through an existing policy of insurance owned or controlled by you, or through a policy to be obtained and paid for by you. With respect to hazard (non-flood) insurance, the property shall be insured against loss by fire, hazards included within the term "extended coverage" which include windstorm, hail, explosion (except of steam boilers), riot, civil commotion, aircraft, vehicles, and smoke for the replacement cost of the buildings or appurtenances on the Property with an industry standard deductible. You may obtain the required insurance coverage through a single or multiple insurance policies from one or more carriers. You must name **CITIZENS BANK, N.A.** as mortgagee on all required insurance policies. The insurance you maintain must provide for ten (10) days notice of cancellation to us. If the Property is located in a designated Flood Zone, you must also maintain flood insurance on the Property in an amount we disclosed to you in writing before you entered into this Agreement. Subject to applicable law, if you fail to obtain or maintain insurance as required herein or in the Security Instrument, we may purchase insurance to protect our own interest, add the premium to your balance, pursue any other remedies available to us, or do any one or more of these things.

In the event the Borrower fails to obtain and maintain any insurance on the Property required by the Lender, the Borrower understands and agrees that the Lender may, at its option (unless required to do so by applicable law), obtain and maintain the required insurance and pay the premium(s) for such insurance, and either: (i) add the cost of the insurance to the unpaid principal balance owed under the Agreement (in which case the Borrower agrees to repay the cost of the insurance in accordance with the repayment terms of the Agreement), (ii) bill the Borrower separately (in which case the Borrower agrees to pay the bill immediately) or we will (iii) establish escrow pursuant to **paragraph 13 (b) "Escrow"**. The Borrower agrees to pay interest on any such amounts at the interest rate provided in the Agreement until such amounts are repaid in full. The Borrower understands and acknowledges that any insurance obtained and maintained by the Lender may (i) only protect the interests of the Lender and any other creditor with a prior security instrument on the Property, and (ii) be more expensive than insurance obtained and maintained by the Borrower.

**13 (b). Escrow.** If lender determines that borrower has not paid property taxes or community associates dues/fees/assessments, or has not established insurance as required by **paragraph 13 (a) "Insurance"**, Lender may establish an escrow account pursuant to the Real Estate Settlement Procedures Act, and require borrower to pay monthly amounts into said escrow account. Borrower agrees that the escrow account payment will be in addition to the payment amounts otherwise agreed to in this Agreement.

**14. Right of Setoff.** We have the right under the law to transfer funds held in any deposit account that any person who signs this Agreement has with us or an affiliated bank, to pay or reduce your obligations if you are in default under this Agreement or we terminate or accelerate your Credit Line Account. You grant to us a contractual possessory security interest in, and hereby assign, convey, deliver, pledge, and transfer to us all right, title and interest in and to, your accounts with us (whether checking, savings, or some other account), including without limitation all accounts held jointly with someone else and all accounts you may open in the

Heloc Agreement - RV 5/2024

future, excluding however all IRA, Keogh, and trust accounts. You authorize us, to the extent permitted by applicable law, to charge or set off all sums owing under this Agreement against any and all such accounts.

**15. Periodic Statements.** We will send you a periodic statement for all check advances made under this Agreement during the Draw Period and for all monthly payments due during the Repayment Period. The statement will show, among other things, payments and credits, check advances, **FINANCE CHARGES**, insurance, and other charges, your Previous Total Balance, and your New Total Balance. Your statement also will identify the Minimum Payment you must make for that billing period and the Payment Due Date. All periodic statements shall conclusively be considered to be correct and accepted by you unless we are notified in writing of any alleged errors within 60 days after receipt.

**16. FINANCE CHARGES.** You will pay a **FINANCE CHARGE** on the outstanding amount of the principal balance under your Credit Line, once each billing cycle during the Draw Period and the Repayment Period. The **FINANCE CHARGE** will begin to accrue on the date advances are posted to your Credit Line Account. There is no "grace period" which would allow you to avoid a **FINANCE CHARGE** on your Credit Line advances. **FINANCE CHARGES** do not accrue on any undisbursed proceeds.

**17. Method Used to Determine the Balance on Which the FINANCE CHARGE Will Be Computed.** We figure the **FINANCE CHARGE** on your account by applying the daily periodic rate to the average daily balance of your Credit Line Account and then multiply by the number of days in the billing cycle. To get the average daily balance, we take the total beginning balance of your Credit Line Account each day and add new advances and subtract the principal portion of any payments and credits. The beginning balance for the period is the New Principal Balance amount from your previous statement. To determine the principal portion of a payment, subtract any unpaid **FINANCE CHARGES** then insurance premiums (if any) and membership fees and other charges (if applicable). This gives us the daily principal balance each day. Then we add up all the daily principal balances for the billing cycle and divide the total by the number of days in the billing cycle (the number of days since your last statement). This gives us the average daily balance. The average daily balance does not include **FINANCE CHARGES**, insurance premiums, membership fees or other charges.

**18. How You May Compute the FINANCE CHARGES On Your Line of Credit Account.** When the average daily balance has been computed, you multiply the average daily balance by the daily periodic rate which is arrived at by dividing the **ANNUAL PERCENTAGE RATE** by the number of days in the year. The result is multiplied by the number of days in the billing cycle. This figure is the **FINANCE CHARGE** assessed for the billing cycle.

**19. Periodic Rate and Corresponding ANNUAL PERCENTAGE RATE.** We will determine the Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** as follows. We start with an independent index, (the "Index"), which is *The Wall Street Journal* Prime Rate, published daily in the listing of "Money Rates." We will use the Index value published on the last business day of each month for any **ANNUAL PERCENTAGE RATE** adjustment. If the Index is no longer available, we will choose a new Index and margin. The new Index will have an historical movement similar to the original Index and margin, and the new Index and margin will result in an **ANNUAL PERCENTAGE RATE** that is substantially similar to the rate in effect at the time the original Index becomes unavailable. The Index is not necessarily the lowest rate charged by us on our loans. To determine the Periodic Rate that will apply to your Credit Line Account, we add a margin to the value of the Index, then divide the value by the number of days in a year (daily). To obtain the **ANNUAL PERCENTAGE RATE**, we multiply the Periodic Rate by the number of days in a year (daily). This result is the **ANNUAL PERCENTAGE RATE**. The **ANNUAL PERCENTAGE RATE** includes only interest and no other costs.

The Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** on your Credit Line will increase or decrease as the Index increases or decreases from time to time. Any increase in the Periodic Rate will take the form of higher payment amounts. Adjustments to the Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** resulting from changes in the Index will take effect on the first day of the next billing cycle. The maximum **ANNUAL PERCENTAGE RATE** during the Draw Period of your Credit Line will be **21.000%**. The maximum **ANNUAL PERCENTAGE RATE** during the Repayment Period of your Credit Line will be **21.000%** or the maximum rate allowed by applicable law. In no event will the **ANNUAL PERCENTAGE**

Heloc Agreement - RV 5/2024



JULY 8, 2024

**RATE** be less than 2.500% during the life of your Credit Line. As of the last business day of the calendar month before the date of this Agreement, the Index was **8.500%** per annum.

Based on that Index value, we estimate that the initial Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** on your Credit Line for the first billing cycle will be as stated below: The initial Periodic Rate and corresponding **ANNUAL PERCENTAGE RATE** actually in effect during the first billing cycle, which will be disclosed on your first periodic statement, may differ from these estimates if the Index changes between the date this Agreement was printed and the date you sign this Agreement.

| Margin Added to Index | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|
| 1.900% | 10.400% | 0.02849% |

### 20. Fixed Rate Locks

#### a) General

During the Draw Period, subject to a $5,000 minimum and the other provisions of this Amendment, you (or any one of you) may lock some or all of your outstanding principal balance into a fixed **ANNUAL PERCENTAGE RATE** (each, a "Lock"). You may have up to 3 Locks outstanding at any time. You cannot obtain a Lock if you are in default under the Agreement. You may select a Lock term of 5, 10, 15 or 20 years, though we may also make other Lock terms available in our sole discretion; provided, however, the original Lock term cannot extend beyond the Maturity Date. To obtain a Lock, we will require you to follow our standard procedure, which may include you signing a Lock request form. Each Lock will be established at a monthly Lock payment that should fully pay off the principal balance of a Lock over the selected number of years in the Lock term at the fixed **ANNUAL PERCENTAGE RATE** for the Lock (subject to c) and d) below), assuming all payments are received by us on their actual due dates. The required payment on your Lock will include the amortization of the principal amount you request to be locked and the interest that will accrue on your Lock from the date we process your Lock until your next monthly billing cycle date.

#### b) Lock Fees, Prepayment and Cancellation

We may charge you a non-refundable fee of up to $200 to establish each Lock. Ask us for our current fee to establish a Lock. We will include any fee to establish a Lock as part of the Minimum Payment shown on the first periodic statement that reflects the establishing of your Lock. You may prepay a Lock in full any time without penalty if you follow our procedures to do so, but you cannot designate partial prepayments on a Lock.

We may unilaterally cancel a Lock if you are in default under any material obligations of this Credit Line Account as provided in the Agreement, or if you are actively seeking payment assistance such as a loan modification on this Credit Line Account.

If a Lock is canceled, we will transfer the unpaid principal balance of that Lock to the balance of your Credit Line that is subject to the variable (adjustable) **ANNUAL PERCENTAGE RATE** described in the Agreement (the variable rate Credit Line balance is the Unlocked Balance).

#### c) Determination of Lock Rate, Lock FINANCE CHARGE Accrual and Lock Payment Application Generally

The fixed **ANNUAL PERCENTAGE RATE** on a Lock will likely be higher than the then current variable (adjustable) **ANNUAL PERCENTAGE RATE** on the variable rate Credit Line balance. The fixed **ANNUAL PERCENTAGE RATE** for each Lock will be established at the time you request the Lock and will be the lesser of (i) the **ANNUAL**

Heloc Agreement - RV 5/2024

**PERCENTAGE RATE** we are willing to offer you based on the Lock term, or (ii) the lesser of the maximum **ANNUAL PERCENTAGE RATE** allowed by applicable law or the 21% maximum **ANNUAL PERCENTAGE RATE** set forth in this Agreement.

Interest on your Lock(s) will accrue in the same manner as the interest on your Unlocked Balance as provided in the Agreement. Accrued and unpaid interest for your Lock(s) and your Unlocked Balances accrue in a single interest category and are not subdivided between interest on Locked and Unlocked Balances.

Except as expressly provided in this Paragraph, your monthly Lock payment will be applied in the same manner as provided in the Agreement for your Unlocked Balances.

#### d) Minimum Monthly Lock Payments, Application of Payments

Your periodic statement will show the total required Minimum Payment due for the billing cycle, including the monthly payment due on your Unlocked Balance and on your Lock(s) during the Draw Period and the Repayment Period. The required monthly Lock payment described in a) above will be in addition to the monthly payment on your Unlocked Balance calculated in accordance with the Agreement. We may include all fees, charges and costs you owe in connection with your Credit Line Account that are not part of your required monthly Lock payment in the monthly payment due on your Unlocked Balance (including, by way of example only, Lock fees, late fees, returned check fees, and Annual Fees).

If a payment is insufficient to cover the total required Minimum Payment due for the billing cycle, including the monthly payment due on your Unlocked Balance and on your Lock(s), we will apply the available payment first to accrued interest, and then to satisfy the principal payment due for the oldest outstanding balance segment on your Credit Line Account, whether Unlocked Balance or locked balances, until the payment is exhausted. Insufficient and late payments could result in a balloon payment due on the scheduled maturity date for the Lock (or, if sooner, when the full amount owed on your Credit Line Account becomes due and payable under the Agreement).

If a payment is more than sufficient to cover the total required Minimum Payment due for the billing cycle, including the monthly payment due on your Unlocked Balance and on each of your Locks, we will apply such additional payment first to satisfy the unpaid principal for the outstanding balance segment on your Credit Line Account accruing interest at the highest rate before applying payments to the segment at the next highest rate.

#### e) Lock(s) and Your Credit Limit

Your available Credit Limit will be reduced by the unpaid principal amount owed on your Unlocked Balance and on your outstanding Lock(s). As you pay down the principal balance of your Unlocked Balance and of your Lock(s), your Credit Limit during the Draw Period is replenished by the amount of such principal reduction(s).

**21. Annual Fee.** There is no Annual Fee for the first year. Thereafter, a nonrefundable Annual Fee of $50.00 will be charged to your Credit Line Account on each anniversary of your Credit Line, during the Draw Period. There is no annual fee if you have the Citizens GoalBuilder® Home Equity Line of Credit (income and geographic limitations apply), or have a Citizens Private Client™, Citizens Private Bank™ or Citizens Quest® Checking account open and active at the anniversary of your Credit Line when the Annual Fee would be assessed.

**22 (a). Late Charges.** Depending on the state or commonwealth identified above, your late fee will be calculated as follows:

Your payment will be late if it is not received by us within **15 days of the "Payment Due Date" shown on your periodic**

**statement.** If your payment is late, we may charge you 5.000% of the payment or \$20.00, whichever is less.

**22 (b). Automatic Payment Benefit:** Borrowers will be eligible to receive a 0.25 percentage point interest rate reduction on their Citizens Home Equity Line of Credit if, at origination, borrower elects to have payments automatically deducted each month from a Citizens consumer checking account the borrower designates for monthly home equity line of credit payments. If you cancel your automatic deductions at any time, or if we are unable to successfully withdraw the automatic deductions from the designated account two or more times within any 12 - month period, Citizens reserves the right to remove eligibility.

**22 (c). Recording Fee.** Upon termination and full payment of all obligations on your Credit Line Account, we will charge you the fee required by the registry of deeds to record the discharge of the Security Instrument, to the extent permitted by applicable law.

**23. Termination and Acceleration.** The entire unpaid balance of your Credit Line Account, including unpaid fees and **FINANCE CHARGES**, shall at our option, and after we provide you with any notice and opportunity to cure required under applicable law, become immediately due and payable and we can terminate your Credit Line Account by sending you notice, if any of the following occur:

(a) You have at any time in connection with this Credit Line Account, including your application for same, committed fraud or have made, or make at anytime, any material misrepresentation;

(b) Failure to make any payment under this Agreement;

(c) Your action or inaction adversely affects the collateral for the Credit Line Account or our rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the Property, failure to pay taxes, failure to maintain adequate insurance for the Property, death of all persons liable on the Credit Line Account or the death of any of the Borrowers if the collateral is adversely affected by such death, transfer of title or sale of the Property, the Property is taken through eminent domain, creation of a senior lien on the Property without our permission, foreclosure by the holder of a prior lien or the use of the dwelling for prohibited purposes if it subjects the Property to seizure.

**24. Suspension or Reduction.** In addition to any other rights we may have, (neither notice nor your agreement is required), we can suspend additional extensions of credit or reduce your Credit Limit during any period in which any of the following are in effect:

(a) The value of the Property declines significantly below the Property's appraised value for purposes of this Credit Line Account. This includes, for example, a decline such that the initial difference between the credit limit and the available equity is reduced by fifty percent and may include a smaller decline depending on the individual circumstances;

(b) We reasonably believe that you will be unable to fulfill your payment obligations under your Credit Line Account due to a material change in your financial circumstances;

(c) You are in default under any material obligations of this Credit Line Account. We consider all of your obligations to be material. Categories of material obligations include the events described above under **paragraph 23**, "Termination and Acceleration", obligations to pay fees and charges, obligations and limitations on the receipt of credit advances, obligations concerning maintenance or use of the Property, obligations to pay and perform the terms of any other deed of trust, security instrument or lease of the Property, obligations to notify us and to provide documents or information to us (such as updated financial information), obligations to comply with applicable laws (such as zoning restrictions), and obligations of any cosigner. No default will occur until we mail or deliver a notice of default to you, so you can restore your right to credit advances;

(d) Government action prevents us from imposing the **ANNUAL PERCENTAGE RATE** provided for under this

Agreement, or impairs our security interest such that the value of the Property is less than 120 percent of the credit line;

(e) We have been notified by governmental authority that continued advances may constitute an unsafe and unsound business practice. We may charge your account for appraisal and Credit Report fees we incur in investigating whether any condition permitting us to suspend your credit privileges or reduce your credit limit continues to exist;

(f) The maximum **ANNUAL PERCENTAGE RATE** is reached.

If your Credit Line is suspended or terminated, you must immediately destroy all Credit Line checks and any other access devices. Any use of checks or other access devices following suspension or termination may be considered fraudulent. You will also remain liable for any further use of such checks or other Credit Line access devices not returned to us.

**25. Change in Terms.** We may make changes to the terms of this Agreement if you agree to the change in writing at that time, if the change will unequivocally benefit you throughout the remainder of your Credit Line Account, or if the change is insignificant (such as changes relating to our data processing systems). Any change in the terms of this Agreement will be made in accordance with the requirements of applicable law.

**26. Collection Costs.** If you fail to abide by any terms of this Agreement, and if we are permitted to do so by applicable law, we may hire or pay someone else to help collect your Credit Line Account. You will pay all reasonable collections costs, including reasonable attorney's fees paid to an attorney that is not our salaried employee and incurred by us in the collection of amounts due under this Agreement to the extent not prohibited by applicable law. This includes, subject to any limits under applicable law, our legal expenses whether or not there is a lawsuit and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay of injunction), appeals, and any anticipated post-judgment collection services.

**27. Delay in Enforcement.** Failure at any time by us to exercise any of our rights hereunder shall not constitute a waiver of our right to exercise the same at a later time.

**28. Default.** You will be in default under this Agreement if any of the following occurs, each of which constitutes a breach of a material obligation of yours under this Agreement :

(a) You fail to make any payment when due or to pay any charge or fee when due;

(b) Your action or failure to act adversely affects our security for your Credit Line Account or a right we have in the security;

(c) A court determines that you are bankrupt or insolvent; or

(d) You gave or give us false or materially misleading information in connection with any extension of credit to you under your Credit Line Account.

**29. Results of Default.** If you are in default, and after we provide you with any notice and opportunity to cure required under applicable law, we may lower your Credit Limit, we may refuse to make any further advances under this Agreement, we may refuse to pay any outstanding checks that would require us to make an additional credit advance to you, we may foreclose on the real property described in the Security Instrument securing your Credit Line Account, we may take whatever other action is permitted under the Security Instrument, and we may exercise any and all of our rights with respect to any other property securing your Credit Line Account. We also may demand that you pay the full amount you owe on your Credit Line Account immediately. We will only take the foregoing actions after providing any notice and opportunity to cure that may be required under applicable law.

You agree to pay any costs we incur in collecting what you owe following your default to the extent not prohibited by applicable

Heloc Agreement - RV 5/2024

law. If we have to sue you to collect what you owe, you agree to pay our legal fees, including court costs to the extent not prohibited by applicable law. In addition to our other rights and remedies under this agreement and the Security Instrument, we reserve the right to honor the check or other device used to obtain an advance without permanently raising your credit limit. If we honor the check or other device, the amount that is more than your credit limit will be due and payable immediately.

**30. Cancellation by You.** If you cancel your right to credit advances under this Agreement, you must notify us in writing and destroy all Credit Line checks and any other Credit Line Account access devices. Despite cancellation, your obligations under this Agreement will remain in full force and effect until you have paid us all amounts due under this Agreement **and you will continue to remain liable for any further credit advances.**

**31. Prepayment.** You may make additional payments or may pay back more than the Minimum Payment Due at any time without penalty, except we will be entitled to receive all accrued **FINANCE CHARGES**, and other charges, if any. Payments in excess of your Minimum Payment will not relieve you of your obligation to continue to make your Minimum Payments. Instead, they will reduce the principal balance owed on the Credit Line. If you mark a check, money order, or other instrument sent in payment with "Paid in Full" or with similar language, we may accept the payment, and you will remain obligated to pay any further amount owed to us under this Agreement.

**32. Notices.** All notices will be sent to your address as shown in this Agreement unless you notify us in writing of any change in your address or name within thirty (30) days of the change. On joint accounts, notices sent to one will be considered notice sent to all unless applicable law provides otherwise.

**33. Information About You.** You authorize us to get financial information about you from third parties, including, but not limited to, a credit bureau, your employer, or another financial institution. You also authorize us to disclose information about your creditworthiness and this Account to a credit bureau, our affiliates and subsidiaries, and to others, unless expressly prohibited by applicable law. We may require a new appraisal of the Property which secures your Credit Line at any time, including an internal inspection, at our sole option and expense, except as provided for in **paragraph 24**, "Suspension or Reduction".

**34. Documentation.** You agree to execute or re-execute any document that we request in order to correct any error or omission in the original Agreement, security instrument, or other Credit Line Account related documents, including, but not limited to, Confirmatory or Corrective security instruments.

**35. Transfer or Assignment.** Without prior notice or approval from you, we reserve the right to sell or transfer your Credit Line Account to another lender, entity, or person, and to assign our rights under the Security Instrument. Your rights under this Agreement belong to you only and may not be transferred or assigned. Your obligations, however, are binding on your heirs and legal representatives.

**36. NEGATIVE INFORMATION:** We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

**37. Tax Deductibility.** You understand that Lender makes no representation or warranty whatsoever concerning the tax consequences of this Credit Line Account, including the deductibility of interest, and that you should consult with your own tax advisor for guidance on this subject. You also agree that Lender shall not be liable in any manner whatsoever should the interest paid on the Credit Line Account not be deductible.

**38. Governing Law.** This Agreement will be governed by and interpreted in accordance with federal law and to the extent not preempted by the laws of the state where the Property is located, except for matters related to interest and the exportation of interest, which matters will be governed by and interpreted in accordance with federal law and the laws of the State of Rhode Island. The loan transaction which is evidenced by this and other related documents has been approved, made, funded, and all necessary documents have been accepted by Lender in the State of Rhode Island.

Heloc Agreement - RV 5/2024

JULY 8, 2024

**39. Interpretation.** The names given to paragraphs or sections in this Agreement are for reference purposes only. They are not to be used to interpret or define the provision of this Agreement. You agree that this Agreement, together with the Security Instrument, is the best evidence of your agreement with us. If a court finds that any provision of this Agreement is not valid or should not be enforced, that fact by itself will not mean that the rest of this Agreement will not be valid or enforced. Therefore, a court may enforce the rest of the provisions of this Agreement even if a provision of this Agreement may be found to be invalid or unenforceable. If we go to court for any reason, we can use a copy, filmed or electronic, of any periodic statement, this Agreement, the Security Instrument, or any other document to prove what you owe us or that a transaction has taken place. The copy, microfilm, microfiche, or optical image will have the same validity as the original. You agree that, except to the extent you can show there is a billing error, your most current periodic statement is the best evidence of your obligation to pay.

**40. Acknowledgment.** You understand and agree to the terms and conditions in this Agreement. By signing this Agreement, you acknowledge that you have read this Agreement. You also acknowledge receipt of a copy of this Agreement, including the Fair Credit Billing Notice and the early Home Equity Line of Credit application disclosure, in addition to the handbook entitled "When Your Home Is On the Line: What You Should Know About Home Equity Lines of Credit," and disclosures/notices provided under applicable state law; given with the application before signing the Security Instrument and before using your Credit Line Account.

If there is more than one Borrower, each is jointly and severally liable on this Agreement. This means we can require any one of you to pay all amounts due under this Agreement, including credit advances made to any of you. Each Borrower authorizes any other Borrower, on his or her signature alone, to cancel the Credit Line, to request and receive credit advances, and to do all other things necessary to carry out the terms of this Agreement. We can release any of you from responsibility under this Agreement, and the other Borrowers will remain responsible.

This written agreement is a final expression of the agreement between all Borrowers and Citizens and this written agreement may not be contradicted by evidence of any alleged oral agreement.

---

You, the undersigned, certify that you have insured the property as identified in **paragraph 12**, entitled "Collateral", against loss by fire, hazards included within the term "extended coverage" which include windstorm, hail, explosion (except of steam boilers), riot, civil commotion, aircraft, vehicles, and smoke for the replacement cost of the buildings or appurtenances on the Property and has a standard mortgagee clause making loss payable to **CITIZENS BANK, N.A.** as its interest may appear. You agree to maintain such insurance until this Agreement is paid in full.

You understand that you may purchase any required insurance through any duly licensed insurance agent and insurance company that is reasonably acceptable to us. You are not required to deal with any of our affiliates when choosing an insurance agent or insurance company. Your choice of a particular insurance agent or insurance company will not affect our credit decision, so long as the insurance provides adequate coverage with an insurer that meets our reasonable requirements. You may obtain the required insurance coverage through a single or multiple insurance policies from one or more carriers.

All documents related to insurance for this loan should be mailed to the following address:

Citizens,

---

**You acknowledge** that you authorize us (and our affiliates, agents and contractors) to contact you at any number you provide to us, from which you call us, or at which we believe we can reach you, and that we may contact you for any reason, including regarding any request you make for a loan or other product, to service or collect on every account you currently have with us or may have with us in the future and regarding any other products or services we are providing to you or which we provide to you in the future. To the extent not prohibited by applicable law, you authorize us to contact you in any manner, including by means of automated

Heloc Agreement - RV 5/2024

JULY 8, 2024

dialing devices, prerecorded messages, wireless push notifications, or text messages, even if you are charged for receiving the communication and even if you will receive the communication on a mobile or wireless device. You agree that such calls are not unsolicited and that we may monitor and/or record them.

**You acknowledge** that any payoff amounts referenced in the of Authorization of Payments to Third Parties paragraph of this Agreement were estimates based on the balances listed on your credit bureau report(s), or obtained from the lien creditors on your behalf.

**You acknowledge** that you received and read, as applicable, the Home Equity disclosure statements provided to you during the application process, which include *What you should know about Home Equity Lines of Credit, Privacy Notice and the package of initial disclosures.*

If there is more than one signer below, it is your intention that this account be a joint account.

**You acknowledge** that with your application, you provided your consent to us to check your employment and credit history with any source and to answer questions about your credit experience with us.

**By signing below you acknowledge** the initial Periodic Rate and corresponding **ANNUAL PERCENTAGE RATE** actually in effect during the first billing cycle, which will be disclosed on your first periodic statement, may differ from these estimates if the Index changes between the date this Agreement was printed and the date you sign this Agreement.

| Margin Added to Index | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|
| 1.900% | 10.400% | 0.02849% |

**By signing below you acknowledge** that any payoff amounts referenced in the of Authorization of Payments to Third Parties paragraph of this Agreement were estimates based on the balances listed on your credit bureau report(s), or obtained from the lien creditors on your behalf.

### Authorization of Payments to Third Parties

**Recording Fee:** If you are paying off and closing an account secured by a Citizens Bank, N.A. lien, the payoff amount listed below includes a fee of $_____ to record the discharge.

|   |   |   |
|---|---|---|
| | $30,000.00 | Credit Limit |
| | $ | Customer |
| | | Amount paid to others on my behalf |
| + | $ | Amount received from borrower |
| - | $ | Total fees to be paid by borrower |
| - | $30,000.00 | Undisbursed Funds |

Disbursement Account Information:

Account Type:                                        Account Number:

You understand that no loan proceeds will be disbursed until any notice of the right to cancel time period specified has expired.

You authorized disbursements to lien creditors and to Citizens loan or line accounts listed above and acknowledge receipt of a filled in copy of this itemization of amount financed.

Heloc Agreement - RV 5/2024

Page 12 of 14                    JULY 8, 2024

Citizens will provide to you the disbursement check(s) payable to non-lien creditor(s) listed above. You are to forward the referenced disbursement check(s) directly to named creditor(s) for appropriate processing by the non lien creditor. In order to secure our lien position, Citizens is authorized to add to the principal balance, or access deposit accounts to cover any shortage.

In the event a pay-off sent to another creditor is insufficient, Citizens is authorized to add to the principal balance, or access your deposit account funds held by us to cover such shortage in order to complete your transaction and secure our lien position. You will receive notification in the event an additional amount is needed. This amount should not exceed $1,000.00; further remedies may apply if a greater amount is needed.

This may result in a higher final payment due.

**READ THIS AGREEMENT BEFORE YOU SIGN. REVIEW THE AUTHORIZATION OF PAYMENTS TO THIIRD PARTIES PARAGRAPH, IN PARTICULAR ENSURE DISBURSEMENT ACCOUNT INFORMATION IS ACCURATE. LOAN PROCEEDS WILL BE DISBURSED TO THE ACCOUNT LISTED. DO NOT SIGN THIS AGREEMENT IF IT CONTAINS BLANK SPACES. THE AGREEMENT IS SECURED BY A SECURITY INSTRUMENT ON YOUR REAL PROPERTY.**

This Agreement is dated **JULY 9, 2024**. THIS AGREEMENT IS SIGNED UNDER SEAL.

**BORROWER:**

**- BORROWER - CRYSTAL CLARK - DATE -**

**Effective Disbursement Date: JULY 15, 2024**

Heloc Agreement - RV 5/2024



Page 13 of 14                                    **JULY 8, 2024**

# BILLING ERROR RIGHTS

## YOUR BILLING RIGHTS

## KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify us in case of errors or questions about your bill.**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the address listed on the back of your bill. Write to us as soon as possible. We must hear from you no later than sixty (60) days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

Your name and account number.

The dollar amount of the suspected error.

Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three (3) business days before the automatic payment is scheduled to occur.

**Your rights and our responsibilities after we receive your written notice.**

We must acknowledge your letter within thirty (30) days, unless we have corrected the error by then. Within ninety (90) days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including **FINANCE CHARGES**, and we can apply any unpaid amount against your Credit Limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any **FINANCE CHARGES** related to any questioned amount. If we didn't make a mistake, you may have to pay **FINANCE CHARGES**, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date on which it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten (10) days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

Heloc Agreement - RV 5/2024

07/30/2024 09:36 AM   Page 1 of 7   Rec Fee: $244.75
Receipt#: 24-59622
Records Department   Doc Code: M

**Return To:**
**CITIZENS**
███████████████████████

**Prepared By:**
**CITIZENS**
███████████████████████

**Parcel ID#**████████████

**Collateral Address:**
**5704 N 12TH ST, PHILADELPHIA, PA 19141**

**Master Mortgage Form Recorded By CITIZENS BANK, N.A. In Volume NA, Page
NA, Instrument** ████████ **PHILADELPHIA County, Pennsylvania Records**

**PENNSYLVANIA
HOME EQUITY LINE OF CREDIT
OPEN-END MORTGAGE
(Securing Future Advances)
INCORPORATING THE OPEN-END MASTER MORTGAGE FORM
RECORDED BY CITIZENS BANK, N.A.
MAXIMUM PRINCIPAL AMOUNT $30,000.00**

**KNOW ALL MEN BY THESE PRESENTS:**

That on **JULY 9, 2024**, the mortgagor **CRYSTAL CLARK AKA CRYSTAL RENEE
CLARK-JORDAN AND** ███████████████; whose address is **5704 N
12TH ST, PHILADELPHIA, PA 19141** ("Property Address"); (hereafter
"Borrower"), in consideration of a loan in the amount of **$30,000.00** made available by
CITIZENS BANK, N.A., a national banking association, with a mailing address of ██
████████████████(hereafter "Lender"), the receipt whereof is hereby

PAMMSFOPEN 1/22 REV.                                    **JULY 19, 2024**
**SERVICELINK TITLE PROVIDER**                          ███████████
▣ ████                          Page 1 of 4

\5)

**Return To:**
**CITIZENS**
███████████████████████

**Prepared By:**
**CITIZENS**
███████████████████

**Parcel ID#:** ██████████

**Collateral Address:**
**5704 N 12TH ST, PHILADELPHIA, PA 19141**

**Master Mortgage Form Recorded By CITIZENS BANK, N.A. In Volume NA, Page NA, Instrument #** ██████████ **PHILADELPHIA County, Pennsylvania Records**

**PENNSYLVANIA**
**HOME EQUITY LINE OF CREDIT**
**OPEN-END MORTGAGE**
**(Securing Future Advances)**
**INCORPORATING THE OPEN-END MASTER MORTGAGE FORM**
**RECORDED BY CITIZENS BANK, N.A.**
**MAXIMUM PRINCIPAL AMOUNT $30,000.00**

**KNOW ALL MEN BY THESE PRESENTS:**

That on **JULY 9, 2024**, the mortgagor, **CRYSTAL CLARK AKA CRYSTAL RENEE CLARK-JORDAN AND** ██████████████████████ whose address is **5704 N 12TH ST, PHILADELPHIA, PA 19141** ("Property Address"); (hereafter "Borrower"), in consideration of a loan in the amount of **$30,000.00** made available by CITIZENS BANK, N.A., a national banking association, with a mailing address of ████████ ██████████████████████ hereafter "Lender"), the receipt whereof is hereby

PAMMSFOPEN 1/22 REV.                              **JULY 19, 2024**
**SERVICELINK TITLE PROVIDER**                    ████████████
⌧ ██████████             Page 1 of 4

\151

acknowledged, does hereby grant, bargain, sell and convey to the said Lender, its successors and assigns forever, the following real property, situated in the County of **PHILADELPHIA** in the State of Pennsylvania ("Property") and more particularly described as follows:

The property is further described in a formal property description, not attached at the time of signature but attached at the time of recording.

and all the Estate, Title and Interest of the said Borrower either in law or equity, of, in and to the said premises; together with all the privileges and appurtenances to the same belonging, and all the rents, issues and profits thereof; to have and to hold the same to the only proper use of the said Lender, its successors and assigns forever.

1. Definitions: In addition to the definitions set forth in the Open-End Master Mortgage form referenced in Section 4 hereof, which definitions shall apply to all capitalized terms contained herein which are not otherwise specifically defined, the following term shall have the following meaning:

(a) "Note" means the Promissory Note or Agreement signed by Borrower, delivered to Lender and dated **JULY 9, 2024**. The Note states that Borrower owes the Lender **$30,000.00** plus interest. Borrower promises to pay this debt in regular Periodic Payments and to pay the debt in full not later than **JULY 14, 2049**.

2. **THIS IS A FUTURE ADVANCE MORTGAGE.** The repayment of which debt is evidenced by a Credit Line Agreement (the "Agreement") made in favor of the Lender by the Borrower and dated the same date as this Security Instrument, under which the Borrower and the Lender reasonably contemplate that there will be a series of advances, payments and readvances but which limits the aggregate principal indebtedness at any time outstanding to a **maximum principal amount, excluding protective advances, of $30,000.00** including, but not limited to, any future advances, with interest thereon.

3. Payment of Principal, Interest and Other Charges. Borrower will pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note.

4. Incorporation of Terms and Conditions of Master Mortgage Form Recorded by Lender.



Page 2 of 4

Borrower covenants and agrees that it shall be bound by the terms, conditions and provisions set forth in that certain Open-End Master Mortgage Form recorded in Official Record in Volume **NA**, Page **NA**, Instrument #           of the **PHILADELPHIA** County ("Master Mortgage"). Upon the occurrence of a default under the terms of such Master Mortgage, Lender shall be entitled to pursue all remedies specified in such Master Mortgage against the Borrower and the Property.

Borrower has been provided with a copy of the Master Mortgage from Lender and acknowledges receiving it along with this Home Equity Line of Credit Open End Mortgage.

5. <u>Defeasance.</u> This Security Instrument is given to secure the advances made by Lender to Borrower under the Note, which Note has a maturity date of **JULY 14, 2049**. Upon the repayment in full of the amounts advanced under the Note, all accrued interest under the Note and all incidental amounts as set forth in the Master Mortgage, this Security Instrument shall be void.

6. **REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST** Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over the Security Instrument to give Notice to Lender's address set forth on page one of the Security Instrument, of any default under the superior encumbrance and of any sale or other foreclosure action.

**<u>REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK</u>**

Page 3 of 4

IN WITNESS WHEREOF, Borrower has executed this Mortgage.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in the Security Instrument and in any Rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered:

*AKA*

*Crystal Renee Clark-Jordan*

- MORTGAGOR - CRYSTAL CLARK AKA CRYSTAL RENEE CLARK-JORDAN -

**GENERAL PROVISIONS INCORPORATED BY REFERENCE AND NOT TO BE RECORDED**

SEE MASTER MORTGAGE FORM REFERRED TO HEREIN

**CERTIFICATE OF RESIDENCE OF MORTGAGEE**

I do hereby certify that the precise address and principal place of business of the within named mortgagee is:

CITIZENS BANK, N.A.

By: _____

Name _____

Title: _____

Page 4 of 4

## INDIVIDUAL ACKNOWLEDGMENT

STATE OR COMMONWEALTH OF _Pennsylvania_ )

COUNTY OF _Philadelphia_ )SS:

On the _22nd_ day of _July_ , _2024_; before me appeared **CRYSTAL CLARK AKA CRYSTAL RENEE CLARK-JORDAN AND** ▓▓▓▓▓▓▓▓▓▓ to me personally known to be the person(s) whose name(s) is/are subscribed to this instrument, and such person(s) acknowledged that he/she/they (i) executed the same for the purposes therein contained, and (ii) executed this instrument as their free act and deed.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

(Official Seal)

_____
**Notary Public**

**Notarial Seal**

Commonwealth of Pennsylvania - Notary Seal
Mame Diarra Fall, Notary Public
Philadelphia County
My Commission Expires June 1, 2027
Commission Number 1435103

Attention Registry of Deeds/Town or City Clerk:

Mail to: **CITIZENS**

Attn: ▓▓▓▓▓▓▓▓▓▓▓

Page 1 of 1                                    ACKPA 01/22

## SIGNATURE/NAME AFFIDAVIT

Date: **JULY 9, 2024**

Lender: **CITIZENS BANK, N.A.**

Borrower(s): **CRYSTAL CLARK**

I, the undersigned Borrower, state that I am one and the same person named in the Note and Security Instrument. I also swear and affirm that the signature below is my true and exact signature for execution of the loan documentation.

I hereby certify that:
**CRYSTAL RENEE CLARK-JORDAN**

is one and the same person.

**CRYSTAL CLARK**
(Print or Type Name)

Signature

**CRYSTAL CLARK**

Date

State of _____ PA _____ )

County of _____ Philadelphia _____ )

On this 22 day of July 2024, before me, the undersigned, a Notary Public in and for said State, personally appeared **CRYSTAL CLARK** known to me, or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

Witness my hand and official seal.

Signature

Notary Public for

My Commission Expires: 06|01|2027

Commonwealth of Pennsylvania - Notary Seal
Name Diarra Fall, Notary Public
Philadelphia County
My Commission Expires June 1, 2027
Commission Number 1435103

Page 1 of 1

Order No.: ██████████

### LEGAL DESCRIPTION
### EXHIBIT "A"

The following described property:

SITUATED IN THE COUNTY OF PHILADELPHIA CITY OF PHILADELPHIA AND COMMONWEALTH OF PENNSYLVANIA.

ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH ANY BUILDINGS THEREON ERECTED. SITUATE IN THE 49TH WARD OF THE CITY OF PHILADELPHIA.

SITUATE ON THE WEST SIDE OF 12TH STREET AT THE DISTANCE OF 38 FEET NORTHWARD FROM THE NORTH SIDE OF CHEW AVENUE.

CONTAINING IN FRONT OR BREADTH ON THE SAID 12TH STREET 16 FEET 4 INCHES AND EXTENDING OF THAT WIDTH IN LENGTH OR DEPTH WESTWARD BETWEEN PARALLEL LINES AT RIGHT ANGLES TO THE SAID 12TH STREET 90 FEET TO THE CENTER LINE OF A CERTAIN 16 FEET WIDE DRIVEWAY EXTENDING FROM SAID CHEW AVENUE TO GRANGE AVENUE.

BEING THE SAME PARCEL CONVEYED TO CRYSTAL RENEE CLARK-JORDAN AND ██████████ BROTHER AND SISTER, AS JOINT TENANTS WITH RIGHT OF SURVIVORSHIP FROM ██████████ WIDOW, BY VIRTUE OF A DEED DATED 09/16/2014, RECORDED 08/29/2016, DEED BOOK 5310, PAGE 4771, COUNTY OF PHILADELPHIA CITY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA.

Assessor's Parcel No:          ██████████